UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISON

REVEREND HOWARD A.
MATHIS,

     Plaintiff,

v.                                                   Case No. 8:21-cv-235-T-23SPF

THE CITY OF LAKELAND,
ET AL.,

     Defendants.

_____/

## DEFENDANT AMERICAN TRAFFIC SOLUTIONS, INC.'S MOTION TO DISMISS AMENDED COMPLAINT WITH PREJUDICE

Defendant American Traffic Solutions, Inc. ("American Traffic Solutions") moves to dismiss the Amended Complaint, (Doc. 28), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.   Factual Background, As Alleged

Reverend Howard A. Mathis ("Mathis") resides in Polk County, Florida. (Doc. 28 at ¶ 3). On September 7, 2018, the City of Lakeland issued a Notice of Violation to Judy Nance Mathis ("J.N. Mathis") for failure to stop at a red light. (*Id.* at ¶ 17). J.N. Mathis executed an affidavit naming Mathis as the driver, which resulted in Mathis receiving a Notice of Violation. (*Id.* at ¶¶ 17–18).[1] Mathis contested the Notice of Violation ("NOV") and a hearing was held on December 12, 2018. (*Id.* at ¶ 19).

---

[1]     *See* Fla. Stat. §§ 316.0083(1)(b)1.a., (d)1.c.; *David v. Kentucky Child Support Agency*, No. 8:19-cv-2591-T-36JSS, 2021 WL 2407957, at *2 (M.D. Fla. Mar. 8, 2021) (citation omitted).

127677576.1

The hearing officer upheld the NOV, and told Mathis to "redress his disagreements to the Circuit Court or the City Council." (*Id.* at ¶¶ 19, 25). Mathis attempted to "redress the violation . . . with the City" but "Assistant City Attorney Romona Sirianni gave out wrong information trying to streamline the process away from the City Commission." (*Id.* at ¶ 25). Attorney Sirianni allegedly "conspir[ed] with Police Officer Franz" by "summoning him to" a meeting to "give . . . false and misguided information to the [City] Commission." (*Id.* at ¶ 26). Mathis attempted to obtain certified copies of the order from the December 12, 2018 hearing, but was allegedly "harassed, and verbally threaten[ed]" by law enforcement. (*Id.* at ¶ 27).

The administrative order upholding the NOV was reversed. (*Id.* at ¶ 20; *see also* Doc. 1-1). The case was remanded. (Doc. 1-1 at 3). Mathis claims a different hearing officer on remand discriminated against him by not hearing cases in alphabetical order and by dismissing an NOV for a white female but upholding the NOV issued to him, a black male. (Doc. 28 at ¶¶ 22, 21.b, 23, 36).[2]

With respect to American Traffic Solutions, Mathis alleges American Traffic Solutions can be served at a specific address. (*Id.* at ¶ 14). He also alleges American Traffic Solutions installs traffic safety cameras across the country, processes a large volume of violations every year, and summarily asserts the legal conclusion that American Traffic Solutions is a money transmitter under Florida law. (*Id.* at ¶ 30).

---

[2]     There is a scrivener's error as to the numbering of the paragraphs. American Traffic Solutions refers to the first paragraph 21 as "paragraph 21.a" and the second paragraph 21 as "paragraph 21.b" to avoid confusion.

Case 8:21-cv-00235-SDM-SPF   Document 30   Filed 11/03/21   Page 3 of 26 PageID 193

Mathis alleges he paid another NOV by electronic means. (*Id.* at ¶ 74 and p. 22). The civil penalty for running a red light is $158.00. Fla. Stat. § 316.0083(1)(b)3.b. The receipt attached to the Amended Complaint shows a total charge of $162.00, (Doc. 28 at 22), which means there was a $4.00 convenience fee.[3]

There are no allegations the penalty was not remitted to the City of Lakeland. Nor are there allegations that Mathis received a traffic citation, which implies the $158 was received because, if the payment not been processed and received, Mathis would have received a traffic citation, Fla. Stat. § 316.0083(1)(c)1.a. There are no allegations the penalty was not distributed as required. *See* Fla. Stat. § 316.0083(1)(b)3.b.

Mathis brings four counts. Count 1 is comprised of five separate claims under 42 U.S.C. § 1983 against nine Defendants. Count 2 is a claim under 42 U.S.C. § 1985(3) seemingly against all Defendants. Count 3 is a claim under Title VI of the Civil Rights Act seemingly against all Defendants. And Count 4 is a claim for unjust enrichment against American Traffic Solutions.

## II. Pro Se Litigants And The Motion To Dismiss Standard

Pro se litigants "are not relieved from following procedural rules." *George v. Snyder*, 847 Fed. App'x 544, 547 (11th Cir. 2021) (citation omitted). A complaint must

---

[3] Exhibits control over contradictory allegations. *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009); *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 143 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015). Moreover, a court is "require[d]" to "draw on its judicial experience and common sense" in evaluating a complaint, and "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." *UFP E. Div., Inc. v. Old Dominion Ins. Co.*, No. 3:19-cv-1113-J-34MCR, 2020 WL 4756820, at *8–9 (M.D. Fla. June 5, 2020) (citations omitted). Five percent of 158 is 7.90, which would have made the total charge $165.90.

provide a "short and plain statement of the claim showing that the pleader is entitled to relief" and "each claim founded on a separate transaction or occurrence" should be stated in a separate count." Fed. R. Civ. P. 8(a), 10(b).

A shotgun pleading violates Rule 8(a)(2) or 10(b), or both. *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The types of shotgun pleadings are: (1) "complaint[s] containing multiple counts where each count adopts the allegations of all preceding counts . . ."; (2) complaints "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) complaints that do not separate "each cause of action or claim for relief" into a different count; and (4) complaints that "assert[] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321–23. Shotgun pleadings "are flatly forbidden" and courts have "little tolerance" for them. *Barmapov v. Amuial*, 986 F.3d 1321, 1234 (11th Cir. 2021) (citations omitted); *Arrington v. Green*, 757 Fed. App'x 796, 797 (11th Cir. 2018). This District recognizes the "duty" to "order repleader" of a shotgun pleading. *Mangel v. Daza*, No. 2:19-cv-525-FtM-38MRM, 2019 WL 5068580, at *2 (M.D. Fla. Oct. 9, 2019).

The Court previously set forth the standard of review for a Rule 12(b)(6) motion. (Doc. 24). The Court should apply that same standard to this motion.

## III.   The Amended Complaint Is Another Shotgun Pleading

Magistrate Judge Flynn previously explained how the Complaint constituted a shotgun pleading. (Doc. 24 at 6). In adopting the Report and Recommendation, this

4

127677576.1

Court warned Mathis that "[i]f the amended complaint fails to state a claim, the complaint is subject to final dismissal, which will mean the case is finished in this [C]ourt." (Doc. 25 at 2). The Court even granted Mathis's request for additional time to file his Amended Complaint after attempting, but apparently failing, to retain counsel. (Docs. 26–27). Nevertheless, Mathis again filed a shotgun pleading.

Count 1 consists of five separate claims against nine different Defendants. What's more, Count 1 impermissibly lumps Defendants together without separating out what each Defendant did. (Doc. 28 at ¶¶ 53–54). Counts 2 and 3 also impermissibly lump Defendants together without separating out what each Defendant did. (*Id.* at ¶¶ 57–58, 62–63, 66). And although Count 4 is a single claim for unjust enrichment, it is really three separate claims, each predicated on the allegation that a different Florida statute was violated. *See McDonald v. Fresh Market, Inc.*, No. 21-20259-Civ, 2021 WL 1670055, at *1 (S.D. Fla. Apr. 28, 2021) (striking complaint as a shotgun pleading because it failed to plead each theory as a separate cause of action (citing *Wheeler v. Carnival Corp.*, No. 20-20859-Civ, 2020 WL 977935, at *1 (S.D. Fla. Feb. 28, 2020)).

The Amended Complaint also includes conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. For example, Mathis alleges "they streamline who receives violation notification . . . ." (Doc. 28 at ¶ 21.a). But he gives no facts or clarity about who "they" are or how the supposed process functions and how that specific process is problematic. Or take the allegation that "a white mob in protest of a mask mandate stormed the Lakeland City Hall and to it under seize and the Police Department was even called." (*Id.* at ¶ 28). How that allegation ties into any

claim, or more specifically any claim against American Traffic Solutions, is unclear. Several of the Counts also just contain quotations or summaries of statutes rather than actual factual allegations. (*See, e.g.*, *id.* at ¶¶ 52, 56, 61, 69–70). Because the Amended Complaint is another shotgun pleading despite the Court's warning, the Amended Complaint should be dismissed with prejudice.

## IV.   Counts 1–3 Should Be Dismissed On The Merits

### A.   Count 1 Fails to State a Claim Against American Traffic Solutions

Count 1 is brought under § 1983, which requires the showing of a "violation of a constitutional right." *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016) (citation omitted).

Count 1 alleges "ATS conspired with the City of Lakeland Commission to implement a money grabbing scheme knowing that red light cameras don't decrease accident[s]." (Doc. 28 at ¶ 49). Yet, as Mathis himself recognizes, Florida law allows municipalities to contract with vendors to implement traffic safety programs. (*Id.* at ¶¶ 37–40). Although Mathis also alleges that American Traffic Solutions "get[s] a percentage of the violation proceed [sic]" and "an illegal commission in violation of Fla. Stat. § 318.121," there are no well-pleaded facts supporting such a conclusion. (*Id.* at ¶ 49). In fact, what allegations are pleaded show the exact opposite.

Florida enacted a comprehensive statutory framework for traffic control. Fla. Stat. § 316.007. The state preempted to itself the regulation of the use of cameras for enforcing Chapter 316. Fla. Stat. § 316.0076. But the state allows cities to "use traffic infraction detectors" and to "install or authorize the installation of any such detectors"

within the incorporated area of a city. Fla. Stat. §§ 316.008(8). Cities are also allowed to issue notices of violation and traffic citations to drivers caught violating state law by running red lights, as well as assess a $158 civil penalty. Fla. Stat. § 316.0083.

Tellingly, Mathis does not allege Florida's framework violates any federal right, nor does he claim the alleged conspiracy violates a federally protected right. Instead, Mathis alleges the City of Lakeland's traffic enforcement program violates section 318.121 of *Florida's* statutes. (*Compare id.* at ¶¶ 47–48 (alleging actions of Hearing Officer Brown and Officer Franz violated the equal protection clause of the Fourteenth Amendment), *with id.* at ¶ 49 (alleging a conspiracy to violate section 318.121 of Florida's statutes)). Because a § 1983 claim requires a violation of a federal right and Mathis affirmatively alleges a violation of a state statute, not a federal constitutional right, the § 1983 claim fails as a matter of law.[4]

## B. <u>Count 2 Fails to State a Claim Against American Traffic Solutions</u>

Count 2 is brought under § 1985(3). A § 1985(3) claim requires the showing of, *inter alia*, "(1) a conspiracy[] (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002) (citation omitted). The second element requires "that the defendant proceeded on his course of conduct 'because of, not merely in spite of, its

---

[4]     The Court previously found that the NOVs issued on February 3, 2014, January 27, 2015, and September 26, 2016, were time-barred and that the June 18, 2018 NOV was dismissed. (Doc. 24 at 8, n.5). As such, the § 1983 claim fails.

adverse effects upon an identifiable group.'" *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (citation omitted). "The purpose of § 1985 was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law, and, as such, a claim under § 1985(3) requires the proof of invidious discriminatory intent." *Id.* (citations omitted).

It appears Count 2 is limited to the claim against Hearing Officer Brown. (Doc. 28 at ¶ 59). But to the extent Count 2 is brought against American Traffic Solutions, it fails to state a plausible claim to relief.

First, Mathis has not alleged American Traffic Solutions entered into a conspiracy. Nothing in paragraphs 17–39, which are incorporated by reference into Count 2, and nothing in the paragraphs under Count 2 itself (i.e., paragraphs 55–59), allege or even suggest American Traffic Solutions agreed with any person to have Hearing Officer Brown treat Mathis differently than drivers who happened to be white and who also violated the law by running a red light, or to otherwise deprive private parties of a constitutional right.

Second, Mathis has not alleged American Traffic Solutions acted because of an intent to achieve an adverse effect on Mathis or, at a larger level, an identifiable group. There are zero allegations whatsoever that American Traffic Solutions entered into a contract with the City of Lakeland because of a race-based animus to adversely affect an identifiable group. Nor are there any allegations that American Traffic Solutions acted under the contract with the City of Lakeland in any particular way because of an adverse effect on an identifiable group.

8

Mathis failed to allege facts showing proof of invidious discriminatory intent. As such, Count 2 fails to state a plausible claim to relief against American Traffic Solutions. *See Britt v. United States Government*, 773 Fed. App'x 494, 496 (11th Cir. 2019) (affirming dismissal of pro se plaintiff's complaint because the complaint "did not have any factual allegations giving rise to a claim," among other reasons).

### C. Count 3 Fails to State a Claim Against American Traffic Solutions

Count 3 is brought under § 2000d. This Count does not specify which of the Defendants it is brought against. To the extent it is brought against American Traffic Solutions, it fails.

Section 2000d states "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." The "text of Title VI also precludes liability against those who do not receive federal funding, including individuals." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1170 (11th Cir. 2003); *see also Pouyeh v. UAB Dep't of Ophthalmology*, 625 Fed. App'x 495, 498 (11th Cir. 2015) (determining there was "no individual liability under Title VI"). The limitation on individual liability is premised on the "contractual-type relationship between the federal government and the receiver of a federal grant." *Methelus v. Sch. Bd. of Collier Cty., Fla.*, 243 F. Supp. 3d 1266, 1282 (M.D. Fla. 2017) (quoting *Godby v. Montgomery Cty. Bd. of Educ.*, 996 F. Supp. 1390, 1413 (M.D. Ala. 1998)). As such, only those entities actually receiving federal money and who are in a

position to accept or reject the federally imposed conditions are subject to liability under Title VI. *Id.* (citations omitted).

Although Mathis treats Defendants as one and the same by alleging "Defendants receive federal financial assistance," such an allegation is not sufficient. *See Embree v. Wyndham Worldwide Corp.*, 779 Fed. App'x 658, 664 (11th Cir. 2019) (affirming district court's dismissal with prejudice of complaint as a shotgun pleading because the complaint, *inter alia*, "failed to specify the exact conduct each defendant engaged in as to each count," which failure "[fell] squarely within the fourth *Weiland* category . . . ."); *see also Weiland*, 792 F.3d at 1323 (explaining the fourth type of a shotgun pleading). Other than Mathis's improper "lumping" allegation, there are no well-pleaded factual allegations showing American Traffic Solutions itself either had the ability to accept or reject federally imposed conditions attached to a grant, or received federal money. Accordingly, the claim under § 2000d fails as a matter of law.

## V.   Count 4 Fails To State A Claim Against American Traffic Solutions

Count 4 is a claim for unjust enrichment premised on three distinct theories against American Traffic Solutions. All three theories cannot survive.

To begin, *Parker v. American Traffic Solutions, Inc.*, No. 14-Civ-24010-Moreno, (S.D. Fla.), offers no support to Mathis because the court in *Parker* ultimately dismissed the case following the Florida Supreme Court's decision in *Jimenez v. State*, 246 So. 3d 219 (Fla. 2018). (Ex. A). *Jimenez* held that section 316.0083 "authorizes a local government to contract with a private third-party vendor to review and sort

information from red light cameras, in accordance with written guidelines provided by the local government, before sending that information to a trained traffic enforcement officer who determines whether probable cause exists and a citation should be issued." 246 So. 3d at 229; *see also id.* at 230–31. *Parker* offers no support to Mathis.

Nor does *Pincus v. American Traffic Solutions, Inc.*, No. 18-cv-80864 (S.D. Fla.).[5] The plaintiff in *Pincus* brought three claims for unjust enrichment: one based on section 316.0083, one based on section 318.121, and one based on section 560.204. *See Pincus*, 2019 WL 9355827. Judge Middlebrooks entered an 18-page order discussing the relevant Florida law. *Id.* He dismissed the claims with prejudice. *Id.* Far from justifying Mathis's theories, *Pincus* actually sets forth the reasons why Count 4 should be dismissed with prejudice.

A.      The Claim for Unjust Enrichment Fails

The elements of an unjust enrichment claim are: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Pincus*, 2019 WL 9355827, at *5 (citation omitted). Unjust enrichment claims can only be premised on "enrichments that are unjust independently of alleged

---

[5]      The district court's order was appealed, and the Eleventh Circuit certified questions to the Florida Supreme Court. *Pincus v. Am. Traffic Sols., Inc.*, 986 F.3d 1305 (11th Cir. 2021); *Pincus v. Am. Traffic Sols., Inc.*, No. SC21-159 (Fla. 2021). Copies of the briefing before the Florida Supreme Court are attached as Exhibits B–D. Oral arguments were held before the Florida Supreme Court on October 5, 2021; the decision has yet to issue.

127677576.1

wrongs." *State of Fla., Office of Attorney Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) (quoting *Flint v. ABB, Inc.*, 337 F.3d 1326, 1330 n.2 (11th Cir. 2003)) (alteration and internal quotation mark omitted). Thus, "as soon as a claimant relies on a wrong to supply the unjust factor . . ., the right on which the plaintiff relies arises from that wrong, not from unjust enrichment." *Id.* (citation, alteration, and internal quotation mark omitted). Courts dismiss unjust enrichment claims premised solely on wrongful conduct. *See, e.g.*, *Taxinet, Corp. v. Leon*, No. 16-24266-Civ-Moreno, 2018 WL 3405243, at *7 (S.D. Fla. July 12, 2018); *Electrostim Med. Servs., Inc. v. Lindsey*, No. 8:11-cv-2467-T-33TBM, 2012 WL 1560647, at *3–4 (M.D. Fla. May 2, 2012); *Tilton v. Playboy Entm't Grp., Inc.*, No. 8:05-cv-692-T-30TGW, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007).

In *Tilton*, plaintiff alleged defendants illegally distributed a film depicting her on spring break. 2007 WL 80858 *1. She alleged a number of statutory claims and one for unjust enrichment. *Id.* Defendants sought dismissal of the unjust enrichment claim on the grounds that it was premised solely on the statutory violations. *Id.* at *3. The court agreed, noting "liability in unjust enrichment has nothing to do with fault." *Id.* at *3 (internal citation omitted).

Mathis's unjust enrichment claim should meet a similar fate because his theory rests on the notion that an alleged statutory violation renders American Traffic Solutions' retention of the convenience fee "unjust." As in *Tilton*, such a theory is legally impermissible.

12

Moreover, when a defendant gives adequate consideration in exchange for the benefit conferred by a plaintiff, a claim for unjust enrichment fails. *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1333 (M.D. Fla. 2015). Stated differently, if a person receives what he bargained for, a claim for unjust enrichment cannot exist. *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672, 675 (Fla. 3d DCA 2000).

In *Asencio v. Wells Fargo Bank, N.A.*, 905 F. Supp. 2d 1279 (M.D. Fla. 2012), plaintiff brought claims for unjust enrichment against a bank to obtain a refund of the $7.50 the bank charged plaintiff to cash a check. *Id.* at 1280. Plaintiff claimed the fee violated section 532.01. *Id.* The court dismissed the claims because the fee was paid in exchange for a service and "when a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Id.* at 1280–81 (citing *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194 (11th Cir. 2001)).

The Amended Complaint shows Mathis received what he bargained for. He used an electronic method to pay his civil penalty by credit card. There is no allegation American Traffic Solutions charged Mathis more than what was disclosed or allowed or did not process his payment. Mathis received the convenience he paid for.

Accordingly, the Court should dismiss Count 4 in its entirety.

## B.     Mathis's Statutory Theories Are Wrong

Even if the Court does not dispose of Count 4 on the grounds that unjust enrichment is not a viable theory, the Court should dismiss the underlying theories.

Words matter, especially in statutory interpretation. *See United States v. George*, 872 F.3d 1197, 1209 (11th Cir. 2017). The Eleventh Circuit "has repeatedly stated that '[it] begin[s] [its] construction of a statutory provision where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) (citation and original alterations omitted). As the "legislature is presumed to know the meaning of words," *State v. Bodden*, 877 So. 2d 680, 685 (Fla. 2004) (citation omitted), courts "must presume that the Florida Legislature stated in Chapter[s] [316 and 318] what it meant, and meant what it said." *Klonis v. State, Dep't of Revenue*, 766 So. 2d 1186, 1189 (Fla. 1st DCA 2000); *see also In re A.W.*, 816 So. 2d 1261, 1263 (Fla. 2d DCA 2002).

All of the theories under Count 4 are predicated on legally incorrect positions appropriated from *Pincus*. Just as the district court in *Pincus* dismissed the claims with prejudice, so too should this Court as to Mathis's copy-cat claims.

## 1.    There is no violation of section 316.0083(b)(4)

Mathis claims American Traffic Solutions was unjustly enriched because it violated section 316.0083(1)(b)4. This claim is meritless.

Mathis alleges in paragraphs 71 and 72 that the convenience fee was 5%. In so doing he reveals that he simply copied what was alleged in *Pincus* rather than conducting a good-faith investigation of the facts pertaining to him. The contract between the City of Lakeland and American Traffic Solutions states the convenience

fee for processing electronic payments is $4.00. (Ex. E at 15, ¶ 1.1.11).[6] The fact that the convenience fee is only $4.00 is confirmed by the receipt Mathis attached to the Amended Complaint, which shows Mathis paid a total of $162.00. Because the civil penalty for running a red light is $158.00, Fla. Stat. § 316.0083(1)(b)3.b., basic math proves the convenience fee is $4.00.

Turning to section 316.0083(1)(b)4., that section prohibits a person from "receiv[ing] a commission *from any revenue collected from violations detected through the use of a traffic infraction detector*," and prohibits a manufacturer or vendor from "receiv[ing] a fee or remuneration *based upon the number of violations detected* through the use of a traffic infraction detector." Fla. Stat. § 316.0083(1)(b)4. (emphasis added). The statute specifically disconnects the compensation that vendors like American Traffic Solutions receive based on the services they perform from other forms of compensation that might be received based on the number of violations their cameras detect. It has nothing to do with the convenience fee that Mathis voluntarily incurred on top of the civil penalty his red light violation triggered.

American Traffic Solutions' contract with the City of Lakeland provides American Traffic Solutions is paid a flat fee per camera. (Ex. E at 4, ¶ 5; 11–12; Ex. F

---

[6]     Generally, "[t]he scope of review must be limited to the four corners of the complaint." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). But "[i]n ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). Given the allegations in the Amended Complaint, the contract between American Traffic Solutions and the City of Lakeland is properly considered at this stage.

127677576.1

at ¶ 2). American Traffic Solutions receives no part of the $158. Nor could it. Every dollar of the $158 penalty is allocated to specific governmental entity or fund: $100 goes into the General Revenue Fund, $10 goes into the Department of Health Emergency Medical Services Trust Fund, $3 goes into the Brain and Spinal Cord Injury Trust Fund, and $45 is kept by the municipality. Fla. Stat. § 316.0083(2)(b)3.a.

Moreover, the convenience fee Mathis paid when he elected to use his credit card to pay his civil penalty is not "based upon the number of violations detected" by the cameras. In fact, the convenience fee has nothing do with the number of violations detected by the cameras. It is instead tied to only the subset of law violators: (1) whose violations are detected; (2) to whom law enforcement actually issued an NOV; and (3) who chose to pay the civil fine via credit card instead of avoiding the convenience fee altogether by mailing in the payment. As the Florida Supreme Court noted in its review of the process utilized in these programs, there are many violators whose conduct may be detected, but for whatever reason, law enforcement decides not to issue an NOV. *See Jimenez*, 2018 WL 2050000, at *9.

Mathis's unfounded effort to use section 316.0083(1)(b)4.'s prohibition against commissions paid out of the revenue collected from red light camera violations or fees to a vendor based on the total number of detected violations has nothing to do with the service fee American Traffic Solutions is paid or the convenience fee that Mathis was charged based on his voluntary election to pay his civil fine via credit card. The $4.00 charge is not a commission from revenue collected from violations detected through the City's use of red light cameras, nor is it a fee based upon the number of

16

violations detected through the City's use of red light cameras. Mathis's claim of a supposed violation of section 316.0083(1)(b)4. should be dismissed with prejudice, just as the similar claims in *Pincus* were dismissed with prejudice.

> ### 2. Section 318.121 does not apply to notices of violation issued under section 316.0083

Florida codified how its traffic laws are enforced. *See* Fla. Stat. § 316.640. Relevant here, a municipality enforces traffic laws through its police department, and the police department may employ a traffic infraction enforcement officer ("TIEO") to do so. Fla. Stat. § 316.640(3)(a), (5)(a). A TIEO

> who observes the commission of a traffic infraction or . . . an illegally parked vehicle may issue a traffic citation for the infraction when . . . he or she has . . . grounds to believe that an offense has been committed which constitutes a noncriminal traffic infraction as defined in s. 318.14. In addition, any such [TIEO] may issue a traffic citation under s. 316.0083.

Fla. Stat. § 316.640(5)(a). Thus, a TIEO can issue a traffic citation through Chapter 318 or Chapter 316.

When enforcement is through Chapter 318, the civil penalty is imposed under section 318.14(2). The amount of the penalty imposed under that section is determined by section 318.18, which sets the penalty and provides a distribution schedule for the penalties collected. Fla. Stat. § 318.18(15)(a)(3). Additionally, a penalty imposed under section 318.14(2) carries an administrative fee and an assessment. Fla. Stat. §§ 318.18(18), (19). Section 318.121 prohibits "additional, fees, fines, surcharges, or costs other than" those "under s. 318.18(11), (13), (18), (19), and (22) . . . to be added to the civil traffic penalties assessed under this chapter [318]." Fla. Stat. § 318.121.

But when enforcement is done by means of a red light camera, Chapter 316 governs. The TIEO must send an NOV within 30 days of the violation and the NOV must specify that the violator is required to pay a penalty of $158. Fla. Stat. § 316.0083(1)(b)1.a. "Notwithstanding any other provision of law," the violator can "pay the penalty pursuant to the notice of violation." Fla. Stat. § 316.0083(1)(b)1.c.

The penalty listed in the NOV is "assessed and collected" by the municipality pursuant to section 316.0083(1)(b)2. The amount of the penalty "assessed and collected" by the municipality is $158. Fla. Stat. § 316.0083(1)(b)3.b. The penalties are to be distributed by the municipality to specific funds and governmental entities. Fla. Stat. § 316.0083(1)(b)3.b. Notably, the penalty assessed under section 316.0083 does not include the administrative fee or the assessment that accompany a penalty assessed under section 318.14(2).

Other provisions of Chapters 316 and 318 demonstrate that penalties assessed for photo-enforced red light violations are assessed under section 316.0083. Section 316.0083(5)(e) states that if an NOV is upheld after a hearing, the violator must "pay the penalty previously assessed under paragraph 1(b)" of section 316.0083.

Section 316.00831—titled "Distribution of penalties collected under s. 316.0083(1)(b)" no less—prescribes that a municipality that "impose[s] a penalty under s. 316.0083(1)(b) and collects any such penalty" must hold and remit a portion of that penalty to the Department of Revenue as required under section 316.0083. Consistent therewith, section 316.0083 says the "[p]enalties assessed and collected by the . . . municipality authorized to collect the funds provided for in [paragraph (1) of

18

section 316.0083], less the amount retained by the . . . municipality pursuant to subparagraph 3., shall be paid to the Department of Revenue." Fla. Stat. § 316.0083(1)(b)2. Section 316.0083 further says the "[p]enalties to be assessed . . . by the . . . municipality are" $158. Fla. Stat. § 316.0083(1)(b)3. The penultimate subsection of section 316.0083 states: the penalty associated with an NOV issued under section 316.0083 is "assessed under paragraph 1(b)" of section 316.0083. Fla. Stat. § 316.0083(5)(e).

Finally, section 318.18 itself recognizes the penalty assessed for a photo-enforced red light violation is assessed under section 316.0083. Fla. Stat. § 318.18(22) ("In addition to the penalty prescribed under s. 316.0083 for violations enforced under s. 316.0083 . . .). If the legislature did not intend for the $158 penalty to be assessed— i.e., imposed or determined by[7]—section 316.0083(1)(b), then it would not have stated "[p]enalties to be assessed . . . by the . . . municipality are" $158 when enforced with a red light camera. Fla. Stat. § 316.0083(1)(b)3.

When, as here, the statutory language is clear, a court is not "authorized to depart from the plain meaning of the language." *In re A.W.*, 816 So. 2d at 1263–64. In any event, even if some unexpressed desire for section 318.121 to apply to section

---

[7]     "Assess" means "to determine the rate or amount of (something, such as a tax, charge, or fine)," "to impose (something, such as a tax) according to an established rate," or "to subject to a tax, charge, or levy." Merriam-Webster, https://www.merriam-webster.com/dictionary/assess (last visited May 10, 2019). The Court may resort to dictionary definitions. *People for Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 879 F.3d 1142, 1146 (11th Cir. 2018); *Raymond James Fin. Servs., Inc. v. Phillips*, 126 So. 3d 186, 190 (Fla. 2013) (citation omitted).

316.0083 existed, "the appropriate remedy is for [the Legislature] to amend the statute," not for a court to rewrite the statute. *Id.* at 1264 (citation omitted).

Simply put, section 318.121 prohibits additional fees from being added to penalties assessed under Chapter 318. The penalty assessed against Mathis was assessed under section 316.0083(1)(b), that is, under Chapter 316. Therefore, section 318.121 does not apply. The Court, like the court in *Pincus*, should therefore dismiss this claim with prejudice.

### 3.   American Traffic Solutions is not a Money Transmitter

Section 560.204 says, "[u]nless exempted, a person may not engage in . . . the activity of a money transmitter, for compensation, without first obtaining a license under this part." Fla. Stat. § 560.204(1). Parts I and II of Chapter 560 do not include a right of action for private individuals. Instead, the Office of Financial Regulation of the Financial Services Commission can bring a complaint for an alleged violation. Fla. Stat. §§ 560.103(7), (25), 560.113, 560.125(4). If the Office brings an action, a "person whose substantial interests are affected . . . may . . . petition any court . . . to enjoin the person or activity that is the subject of the proceeding from violating" section 560.125. Fla. Stat. § 560.125(3). The Office can also bring an action to enjoin a person violating Chapter 560. Fla. Stat. § 560.113(1). In addition, the Office can apply for an order impounding, and appointing a receiver for, the property, assets, and business of the person being sued by the Office. Fla. Stat. § 560.113(2). The Office is also able to apply for an order directing the defendant to make restitution of the sums proven by the Office to have been obtained in violation of Chapter 560. Fla. Stat. § 560.113(3).

127677576.1

Before the Florida Supreme Court in *Pincus*, the Office took the position that the convenience fee American Traffic Solutions charges does not constitute compensation for engaging in the activity of a money transmitter and that section 560.204(1) did not support the claim for unjust enrichment. (Ex. G). The Office's position should be enough to show that Mathis's claim is meritless.

A review of relevant case law against the foregoing statutory framework also shows Mathis's claim cannot succeed. In *Buell v. Direct General Insurance Agency, Inc.*, plaintiffs bought insurance from Direct General through unlicensed agents, which slid other products into the policies. 267 Fed. App'x 907, 909 (11th Cir. 2008). Plaintiffs asserted common law claims on the theory that the contracts were unlawful due to the sliding and the unlicensed sales agents. *Id.* The district court dismissed the common law claims "because plaintiffs may not evade the Florida legislature's decision to withhold a statutory cause of action for violations of the pertinent provisions . . . by asserting common law claims based on such violations." *Id.* The Eleventh Circuit agreed.

The *Buell* court noted that Florida "look[s] to whether the statute was intended to create a private remedy." *Id.* It also noted as "highly probative evidence" of the legislature's intent that the legislature created a private cause for certain violations but not others. *Id.* The court also specifically rejected plaintiffs' argument that the availability of a statutory remedy should be irrelevant because Florida common law makes restitution available where a contract's subject matter is illegal on the basis that such an argument "runs afoul" of *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 985 (Fla.

21

1994). *Buell*, 267 Fed. App'x at 910. Finally, the court noted the statutory provisions did not expressly or impliedly provide that a violation thereof renders the contract unenforceable. *Id.*

In *State Farm Fire & Casualty Co. v. Silver Star Health and Rehab*, Silver Star was a chiropractic clinic and some of its patients were insured by State Farm. 739 F.3d 579, 582 (11th Cir. 2013). State Farm sued Silver Star for, *inter alia*, unjust enrichment on the theory that Silver Star was not entitled to monies paid by State Farm because it failed to comply with the Florida Health Care Clinic Act's license requirement. *Id.*

After losing in the district court, Silver Star appealed and argued State Farm did not have a judicial remedy because the statute did not say a violation of the licensing requirement could be determined by a court. *Id.* at 583. The Eleventh Circuit disagreed because the provision at issue stated "[a]ll charges . . . made by or on behalf of" an unlicensed clinic "are unlawful charges, and therefore are noncompensable and unenforceable." *Id.* (citation omitted). Once the court decided that charges by an unlicensed clinic were unlawful, noncompensable, and unenforceable under the statute, the court said the unjust enrichment claim could be maintained. *Id.* at 584.

While the Eleventh Circuit reached different results in *Buell* and *Silver Star*, those differing results were brought about by different statutory language rather than differences in legal analysis. Indeed, both *Buell* and *Silver Star* looked to the statutory language to determine if the legislature intended to create a private remedy.

That conclusion is supported by the Restatement (Third) of Restitution and Unjust Enrichment: "[i]f the statute that makes the challenged conduct wrongful

22

confers no private right of action, a would-be plaintiff may not circumvent this legislative omission by styling his action one for unjust enrichment instead of damages." Restatement (Third) of Restitution and Unjust Enrichment, § 44 Reporter's Note a. It is also supported the majority of district courts having considered the issue.[8]

*Hucke v. Kubra Data Transfer Ltd., Corp.*, examined *Buell*, *Silver Star*, and *Murthy*, as well as the language of Florida's money transmitter statute. 160 F. Supp. 3d 1320, 1323-27 (S.D. Fla. 2015). Specifically as to *Murthy*, where homeowners brought claims for negligent performance of a contract, discharge of a fraudulent lien, and violation of Florida's minimum building codes against the qualifying agent *qua* general contractor, the court stated:

> *Murthy* stands for the proposition that, "where a defendant has injured a plaintiff in a way that gives rise to a common law claim (in *Murthy*, performed construction work in a negligent fashion), the mere fact that the defendant might also have violated a statute without any private right of action does not preclude a plaintiff from asserting its existing common law claims." . . . However, "[n]othing in *Murthy* stands for the proposition that a plaintiff may assert a common law claim" where "Plaintiff has not alleged any injury that would exist independent of the purported statutory violations." *Id. Buell* considered the latter situation, which *Murthy* simply did not address.

*Hucke*, 160 F. Supp. 3d at 1325-26. The court then went on to review the plain language of section 560.204. Based on that review, the court concluded a violation of section 560.204 cannot support an unjust enrichment claim. *Id.* at 1327.

---

[8]     *But see Pincus v. Speedpay, Inc.*, No. 15-80164-Civ-Marra, 2015 WL 5820808 (S.D. Fla. Oct. 6, 2015). For the reasons explained in *Hucke* and *Cross*, *Pincus* was wrongly decided.

In *Cross v. Point and Pay, LLC*, 274 F. Supp. 3d 1289 (M.D. Fla. 2017), the court examined *Buell* and *Silver Star*, and determined those two cases "used the same approach—examining the underlying statute to determine whether the agreements were enforceable. Those courts merely came to opposite conclusions because the statutes provided opposite directives." *Id.* at 1294–95. Based on the reconciled rule, the *Cross* court examined the language of section 560.204, and held that a plaintiff cannot bring an unjust enrichment claim based on a violation of section 560.204 because that section does not render agreements with an unlicensed money transmitter unenforceable. *Id.* at 1296.

And in *State Farm Mutual Automobile Insurance Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307 (S.D. Fla. 2017), the unjust enrichment claim was based on an alleged statutory violation. *Id.* at 1229. Noting an unjust enrichment claim based on a statutory violation is not per se barred, the court examined the statutory language at issue and compared that language to the statutes at play in *Silver Star* and *Buell*. *Id.* at 1229-30. Unlike the statute in *Silver Star*, the statutes in *Performance Orthopaedics* did not provide that charges violative of the statutes were unlawful, noncompensable, or unenforceable. *Id.* at 1330. Thus, *Buell*'s rationale applied and no private remedy existed. *Id.*

Unlike the statute in *Silver Star*, neither section 560.204 says a contract with an unlicensed money transmitter is unlawful, noncompensable, or unenforceable. Therefore, *Hucke* and *Cross* correctly applied the rationale of *Buell* to hold that section

560.204 does not allow for a private remedy that seeks restitution.

Furthermore, the legislature made a deliberate choice by giving the Office the power to seek an order of restitution while limiting private persons to injunctive relief. Fla. Stat. §§ 560.113(3), 560.125(3). The legislature made a second, deliberate choice. Namely, a license is required to engage in the business of a money services business, which includes a money transmitter, or in the business of a deferred presentment provider. Fla. Stat. § 560.125(1); *see also* Fla. Stat. §§ 560.103(12), (22) (defining deferred presentment provider and money services business); 560.402(3) (defining a deferred presentment transaction). It is only in the situation of an unlicensed deferred presentment provider that the legislature elected to void an unlicensed deferred presentment transaction. Fla. Stat. § 560.125(1). It is also only an unlicensed deferred presentment provider who cannot collect, receive, or retain any money relating to an unlicensed deferred presentment transaction. *Id.*

Those two choices are "highly probative evidence" of the legislature's intent to not create a private remedy for a violation of section 560.204(1) with respect to a money transmitter. *See Buell*, 267 Fed. App'x at 909; *Performance Orthopaedics*, 278 F. Supp. 3d at 1330. Allowing Mathis to use an unjust enrichment claim to obtain a refund would directly contradict the legislature's choice to exclude private persons from the ability to do so in the situation of a money transmitter.

## VI.   <u>Conclusion</u>

American Traffic Solutions requests that the Court dismiss the Amended Complaint with prejudice for all the reasons stated above.

127677576.1

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for Defendant American Traffic Solutions, Inc. conferred with Plaintiff by phone on November 2, 2021, via telephone. The parties were unable to reach agreement on the issues raised herein. The motion is opposed.

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that on November 3, 2021, the foregoing motion to dismiss was served on Plaintiff by mailing it to 6109 High Glen Drive, Lakeland, Florida 33813, in compliance with Federal Rule of Civil Procedure 5(b)(2)(C), and on counsel of record for all Co-Defendants through CM/ECF, Fed. R. Civ. P. 5(b)(2)(E).

Respectfully submitted,

*/s/ Kevin P. McCoy*
Kevin P. McCoy
Florida Bar No.
David R. Wright
Florida Bar No. 119453
Carlton Fields, P.A.
4221 W. Boy Scout Blvd., Ste. 1000
Tampa, FL 33607
Phone: 813-223-7000
Fax: 813-229-4133
kmccoy@carltonfields.com
dwright@carltonfields.com
lfuller@carltonfields.com
kdelvalle@carltonfields.com

*Attorneys for Defendant American Traffic Solutions, Inc.*

127677576.1